Beem vs. Kimberly and another.

Beem, Respondent, vs. Kimberly and another, Appellants.

*September 22 — October 9, 1888.*

*(1, 5) Evidence: Genuineness of signature: Opinions: Transactions with person since deceased. (2, 3) Filing of papers in court: Presumptions. (4) Reversal of judgment: Improper admission of evidence. (6) Election by widow not to take under will: Estoppel. (7, 8) Setting aside order of county court assigning estate of testator: Fraud of executor: Laches. (9) Acceptance of legacy: Estoppel to claim under widow who has renounced provision of will. (10) Costs imposed on one defendant only: Discretion.*

72  343
d88  133
72  343
89  118
72  343
98  200

1. The evidence in this case is *held* to sustain the finding of the trial court in favor of the genuineness of the signature to a notice of election by a widow not to take under her husband's will.

2. A notice of election by a widow not to take under her husband's will having been found in the office of the county court duly filed therein as one of the papers belonging to the records of the court, the presumption is that it was properly filed.

3. Where such notice was delivered for filing by a reputable attorney, it will be presumed that he was authorized to file the same on behalf of the widow.

4. The admission of improper evidence will not necessarily work a reversal of the judgment, if the findings on which such judgment is based are sustained by the evidence properly admitted.

5. A legatee named in the will of a widow may testify as to her opinion of the genuineness of the signature of such widow to an election not to take under her husband's will, through which election the widow acquired the estate bequeathed to the witness.

6. A will directed the segregation and investment of one third of the testator's estate, and gave the income thereof to his widow during her life. Before such segregation had been made, the widow, at her request, received from the executor a small amount of money

for her present support. *Held,* that she was not thereby estopped to elect, within a year after the testator's death, to take the provision made for her by law instead of that made in the will.

7. An executor obtained an order assigning the residue of the estate in his hands to himself and his brother, who were the residuary legatees. He knew, at the time, that the testator's widow had elected not to take under .the will; that she thereby became entitled to one third of the personal property in his hands as executor; and that she had died leaving a will, which had been probated, giving all her estate to the plaintiff herein. He knew, also, where the plaintiff resided, and that she made claim to that part of the estate of his testator which had belonged to the widow, but had not intimated to her that he intended to contest such claim or the right of the widow under said election; and upon applying for the order distributing the estate he made no proof of his or his brother's right to the whole estate, and did not inform the court of the plaintiff's claim or give her any actual notice of the proceeding. *Held,* that the order should be set aside, as having been fraudulently obtained.

8. When the plaintiff heard of such order she at once took legal advice, and pressed upon her counsel the commencement of proceedings to set it aside. This action was commenced about three years after. The unnecessary delay, if any, was the fault of her attorney. Nothing had been done with the estate, in the mean time, which in any way altered the relations of the parties or prejudiced the rights of the defendants. *Held,* that the plaintiff did not forfeit her rights by such delay.

9. A legatee had received her legacy before the testator's widow elected not to take under the will. After making such election, but before receiving her share of the estate, the widow died, bequeathing all her property to such legatee. *Held,* that the latter was not estopped, by her acceptance of the legacy first mentioned, from claiming that part of the testator's estate to which the widow became entitled by virtue of said election.

10. An executor having fraudulently obtained an order assigning his testator's estate to himself and his brother, there was no abuse of discretion in charging him alone with the costs of an action to set aside such order, although his brother joined in the defense.

APPEAL from the Circuit Court for *Winnebago* County. The following statement of the case was prepared by Mr. Justice TAYLOR as a part of the opinion:

The facts in this case are substantially as follows:

Harvey L. Kimberly, the father of the appellants, *Daniel L. Kimberly* and *Augustus H. Kimberly*, died at Neenah, in this state, November 23, 1881, testate, leaving surviving him his two sons above named and a widow, Lucy Ann Kimberly, she being a second wife and not the mother of the appellants. The will of the deceased was duly probated in the county court of Winnebago county, December 27, 1881, and *Daniel L. Kimberly*, one of the appellants, was executor of the will of said deceased, and letters of administration, with the will annexed, were issued to him by said court. The said executor proceeded to administer the estate of said deceased as such executor. A provision for the support of the widow of the deceased was made in said will. The widow, not being satisfied with the provision made for her in said will, on the 24th of April, 1882, caused to be filed in the office of the county court of Winnebago county a notice in writing, duly signed by her, stating that she elected to take the provisions made for her by law instead of the provisions made for her in said will.

On the 9th day of May, 1882, said widow, Lucy Ann Kimberly, died in the city of Chicago, testate, leaving the respondent in this action, her granddaughter, her sole devisee and legatee. On June 1, 1882, this will was duly probated in the probate court of Cook county, in the state of Illinois, and the respondent was appointed sole executrix of said will. A certified copy of the will of Lucy Ann Kimberly was filed in the office of the county court of Winnebago county, and admitted to probate by said county court on the 29th of August, 1882, in the manner prescribed by sec. 2295, R. S. The evidence shows that *Daniel L. Kimberly*, the executor of the will of Harvey L. Kimberly, knew that said Lucy Ann Kimberly had filed her said notice in writing in said county court of Winnebago county, signed by her. He also knew of the death of Lucy Ann Kimberly,

that she died testate, and that by her will she had devised and bequeathed to her granddaughter, the respondent in this action, all her property, both real and personal. These facts were known to said *Daniel L. Kimberly* several months before he applied to the county court of Winnebago county for a final settlement of his accounts as executor of his deceased father's estate. The said *Daniel L. Kimberly* presented his final account to the county court of Winnebago county on the 25th day of September, 1882, and asked to have the same settled and allowed, and for a distribution of the estate of his testator. By this account it appeared that there was in his hands as such executor the sum of about $42,000, in personal property, to be distributed. On the 25th of October, 1882, the said county court made an order settling the accounts of said executor, discharging him from his trusts, and distributing the whole of said estate in equal shares to himself and his brother, *Augustus Kimberly*.

By the provisions made in the will of Harvey L. Kimberly for his wife, Lucy Ann Kimberly was entitled to one third of the income of his estate during her life. There was also a bequest in a codicil to said will to the respondent, *Lulu Stoughton Beem*, of the sum of $1,000, and to her husband, $2,000. The evidence shows that the executor of Harvey L. Kimberly had paid to Lucy Ann Kimberly, before she filed her notice declining the provisions made for her in said will, and at her request, the sum of $819.50. It also appears that the said respondent, *Lulu S. Beem*, received from said executor the bequest given to her by the will of said Harvey L. Kimberly, deceased.

The application of said *D. L. Kimberly*, executor of the will of Harvey L. Kimberly, deceased, for a settlement of the estate of said deceased, was dated September 20, 1882, and was in the following form: "*In Probate, Winnebago County.* In the Matter of the Estate of Harvey L. Kim-

berly, Deceased.  The petition of *D. L. Kimberly*, executor of the will of Harvey L. Kimberly, deceased, respectfully shows that he has fully administered the estate of said deceasęd, and paid all the debts; funeral charges, and expenses of administration, as will appear from the account of his administration herewith submitted.   Therefore the petitioner prays that said account be allowed, and that the remainder of said estate be, by order or judgment of this court, assigned to such persons as are by law entitled to the same."   The notice of the hearing upon such petition was published in the *Neenah Times*, fixing the 24th day of October as the day for such hearing.   The notice states on that day there would be heard before said Winnebago county court the application of said *Daniel L. Kimberly* for the adjusting and allowance of his final account as executor of the last will and testament of Harvey L. Kimberly, and for the assignment of the residue of said estate "*to the persons by law entitled thereto.*"

The respondent, on the ―― day of ――, 1886, presented her petition to the county court of Winnebago county, setting up the foregoing facts, together with some other facts showing why she had not proceeded more promptly in making her application to said court for the relief demanded; and prayed "that said court vacate the order of distribution made on the 25th day of October, 1882, and that said *Daniel L. Kimberly*, as executor of the last will and testament of Harvey L. Kimberly, deceased, be required by a proper order to pay to her the one-third share of the net personal estate of said Harvey L. Kimberly, deceased, and for such other and further relief as to the court shall seem just and equitable in the premises."   *Daniel L. Kimberly* and *Augustus Kimberly* answered the petition. The county court, after a hearing, dismissed the petition of the respondent, and from the order of the county court de-

nying the relief prayed for the respondent appealed to the circuit court. A new trial was had in that court, and after hearing the evidence in the case the circuit court made the following order and judgment:

"That the order of the county court of Winnebago county, Wisconsin, sitting in probate, dated March 29, 1887, made in the matter of the estate of Harvey L. Kimberly, deceased, refusing to vacate the order and decree of distribution in said estate, dated October 25, 1882, be, and the same hereby is, reversed. It is further ordered, adjudged, and decreed that the order and decree of distribution, dated October 25, 1882, made and entered by the county court of Winnebago county, Wisconsin, in the estate of Harvey L. Kimberly, deceased, be, and the same is hereby, vacated and set aside, so far as the plaintiff is concerned. It is further ordered and decreed that this case be, and the same hereby is, remitted to the county court of Winnebago county, Wisconsin, for further proceedings in accordance with the findings of fact and conclusions of law made and filed by this court on this appeal, and that said county court thereupon forthwith take an account of the amount equitably due to *Lulu Stoughton Beem* out of and from the estate of Harvey L. Kimberly, deceased, the same being the amount Lucy Ann Kimberly became, or would have been, entitled to receive by virtue of having filed April 24, 1882, her notice of election to take the provision made for her by law instead of the provisions made for her in the will of her late husband, Harvey L. Kimberly, deceased, with interest thereon, less such amounts as she did receive out of or from the estate of Harvey L. Kimberly, deceased; and *Daniel Lucius Kimberly*, as executor of the estate of Harvey L. Kimberly, deceased, is hereby ordered to pay over to *Lulu Stoughton Beem* the amount so found due to her. It is further adjudged that the plaintiff, *Lulu Stoughton Beem*,

have and receive of *Daniel Lucius Kimberly* the costs and disbursements of the trial in this court, taxed at the sum of $180.94."

To this order exceptions were duly taken by the appellants, and an appeal from such order was taken to this court. Upon the trial in the circuit court the circuit judge made and filed certain findings of fact and conclusions of law. To the second, third, fifth, seventh, eighth, ninth, eleventh, twelfth, thirteenth, and fourteenth findings of fact the appellants excepted, as not being sustained by the evidence, and they also except to all the conclusions of law. The following are the finding of facts excepted to:

. "2. That, while the estate of Harvey L. Kimberly, deceased, was in process of settlement in the county court of Winnebago county, to wit, on the 24th day of April, 1882, Lucy Ann Kimberly, the widow of said Harvey L. Kimberly, duly filed in that court, pursuant to the provisions of law, a notice in writing, stating that she elected to take the provision made for her by law as the widow of said Harvey L. Kimberly, instead of the provision made for her in the last will and testament of said Harvey L. Kimberly, deceased.

"3. The court finds that said notice of election was signed by Lucy Ann Kimberly, and that her signature appearing thereto is her own genuine signature and handwriting; that the said notice of election was drawn for and at her request by the Hon. Wm. F. Vilas, and after her signature of the same she caused it to be filed in the county court of Winnebago county, Wisconsin, through William F. Vilas and Charles W. Felker, both of whom are attorneys at law.

"5. The court further finds as a matter of fact that under and according to the statutes of Illinois, the plaintiff and petitioner, *Lulu Stoughton Beem*, by the said probate proceedings in the probate court of Cook county, Illinois, and

the provisions of said last will and testament of the said Lucy Ann Kimberly, deceased, making her sole legatee of said Lucy Ann Kimberly's estate, and taken and acquired, and became fully vested with all the rights, property, and estate which the said Lucy Ann Kimberly had or was entitled to in the estate of Harvey L. Kimberly, deceased, including all rights acquired by virtue of the filing of the notice of election above referred to, and that the rights, property, and estate so acquired by *Lulu Stoughton Beem* she still holds and possesses.

"7. The court further finds that the defendant *Daniel L. Kimberly*, who was the executor of the estate of Harvey L. Kimberly, deceased, at and before the time he filed his final account on September 20, 1882, and also had actual knowledge of the notice of election and the filing thereof by Lucy Ann Kimberly, on the 24th day of April, 1882, and also had actual knowledge of the subsequent death of the said Lucy Ann Kimberly, and actual knowledge of the provisions of her said last will and testament, and actual knowledge of the probate thereof in the probate court of Cook county, Illinois, and of the allowance thereof by the county court of Winnebago county, Wisconsin, sitting in probate, and that the plaintiff and petitioner, *Lulu Stoughton Beem*, had thereby become and then was vested with and entitled to all of the rights, property, and estate which said Lucy Ann Kimberly had by virtue of the premises aforesaid, or might have, in the estate of Harvey L. Kimberly, deceased.

"8. The court further finds that the said *Daniel L. Kimberly* is a son of Harvey L. Kimberly, deceased, and that the plaintiff and petitioner, *Lulu Stoughton Beem*, from her infancy to the time of her marriage, lived in the family of said Harvey L. Kimberly, sustaining, apparently, the relation of child to said Harvey L. Kimberly and said Lucy Ann Kimberly, the wife of said Harvey L. Kimberly; that,

for most of the time from the infancy of said *Lulu Stough-
ton Beem*, who was the granddaughter of the said Lucy
Ann Kimberly, and also a blood relation of said Harvey L.
Kimberly, down to the time of her marriage, at about the
age of twenty-one, she, the said *Lulu Stoughton Beem*, and
the said *Daniel Lucius Kimberly* lived together in the fam-
ily of Harvey L. Kimberly and Lucy Ann Kimberly, and
during all that time, and until after said *Daniel Lucius Kim-
berly* pretended to close and settle the estate of Harvey L.
Kimberly, his father, on October 25, 1882, the relations be-
tween said *Lulu Stoughton Beem* and *Daniel L. Kimberly*
had been continuously cordial and pleasant.

"9. That on or about the year 1880 the said *Lulu Stough-
ton Beem* married Martin Beem, of Chicago, and went to
live in that city; that from that time on until long after the
said 25th day of October, 1882, the said *Daniel Lucius
Kimberly* knew where said *Lulu Stoughton Beem* lived in
Chicago, knew her post-office address, was well acquainted
with her husband, and with his place of business in Chicago,
and of her rights in the estate of Harvey L. Kimberly, de-
ceased, under and by virtue of the premises aforesaid, but
that he gave her no information whatever regarding the
progress of settlement of the said estate of his father, Har-
vey L. Kimberly, and she asked for none, and made no com-
munication to her or her husband after the death of Lucy
Ann Kimberly upon the subject, and never at any time
gave any notice, actual or constructive, either to Lucy Ann
Kimberly, to *Lulu Stoughton Beem*, or to any other person,
that he, as the executor of Harvey L. Kimberly's estate,
objected to or disputed or questioned the execution and
filing of said notice of election by said Lucy Ann Kim-
berly, and the rights thereby granted and secured to her
and her heirs and legatees under and pursuant to the pro-
visions of the laws of Wisconsin; that said *Daniel L. Kim-
berly*, prior to the filing of said final account September

20, 1882, had seen the said notice of election, and thought the signature thereto the genuine signature of said Lucy Ann Kimberly, and had no doubt about its authenticity for years afterwards.

"11. The court further finds that no other petition, application, order, or notice in the premises was made or given to anybody or in any form or manner than as above recited; that the files and records in the estate of Harvey L. Kimberly, deceased, then showed, and still continue to show, that Lucy Ann Kimberly, or her legal heir or representative, was one of the parties entitled to share in the residue of the estate of Harvey L. Kimberly, deceased, and that no question had ever been raised as to that right; that said *Daniel Lucius Kimberly* appeared before said Winnebago county court on the said 24th day of October, 1882, and procured the allowance of his final account, leaving a balance of over $42,000 in his hands, and thereupon, without producing or offering any proof whatsoever, and without asking the court to strike from the files in the said estate said notice of election so filed by Lucy Ann Kinberly, April 24, 1882, which he then believed to be genuine, he induced the court to make and enter an order and judgment of distribution which, after providing for some minor matters, divided said entire estate of Harvey L. Kimberly, deceased, between himself and his brother, *Augustus Kimberly*, one of the defendants herein.

"12. That, at the time the said *Daniel Lucius Kimberly* obtained the said order of distribution, he knew that plaintiff and petitioner, *Lulu Stoughton Beem*, as the sole legatee of Lucy Ann Kimberly, deceased, was in law and in equity justly entitled to one third share of said $42,000, and that he, as such executor, held the same in trust for her; but said *Daniel Lucius Kimberly* omitted to inform the court of the genuineness of the signature of Lucy Ann Kimberly to the said notice of election, and of the rights thereby and

through the will of said Lucy Ann Kimberly acquired and then held by said *Lulu Stoughton Beem*, and omitted to inform the court of any of the facts above recited, of which he had full knowledge, and omitted to make any petition or procure any order for a hearing and adjudication upon the rights either of Lucy Ann Kimberly or her sole legatee, *Lulu Stoughton Beem*, and omitted to inform the court that he desired to contest those rights, or cut them off by direct or indirect proceedings, and omitted to produce any evidence bearing upon this question of heirship, but induced the court, without petition or notice or evidence, to make and enter an order and judgment which cut off the vested rights of Lucy Ann Kimberly and her representative, and that the same was a constructive fraud upon petitioner.

"13. The court further finds that the said plaintiff and petitioner, *Lulu Stoughton Beem*, had in good faith been advised, and she believed, that the estate of Harvey L. Kimberly, deceased, could not be settled in less than two years from the commencement of proceedings to probate his will; that she also, in good faith, had consulted with a competent attorney of this court, and supposed that he was retained to and would protect her interest in the estate of Harvey L. Kimberly, deceased, if occasion arose, but by misapprehension between the parties said attorney did not understand that he was employed to watch the proceedings in the settlement of the estate of Harvey L. Kimberly, deceased; that said *Lulu Stoughton Beem* had no apprehension or reason to apprehend that her rights or the rights of her testatrix in the estate of Harvey L. Kimberly were or would be disputed or denied, but she believed *Daniel L. Kimberly*, as executor, would protect them; that until on or about the 27th day of November, 1883, neither the said *Lulu Stoughton Beem*, nor any one acting for or in her behalf, had any knowledge or information whatever of any proceedings relating to or connected with the filing of the

final account of *Daniel Lucius Kimberly* as executor, or of any of the proceedings thereafter had in the settling or distribution of said estate of Harvey L. Kimberly, deceased, and that such lack of knowledge or information was not the result of any carelessness or negligence on the part of the said *Lulu Stoughton Beem*, or any one acting for her, but was due to the belief of said *Lulu Stoughton Beem* that said estate could not be settled within the two years, and her further belief and confidence that *Daniel Lucius Kimberly*, as such executor, would not take any steps which could affect her rights or interests without informing her or fully protecting her the same as if she were present; that, immediately after the said *Lulu Stoughton Beem* learned of the proceedings upon the final settlement of the estate of Harvey L. Kimberly, deceased, she took due and diligent steps to assert her rights, and from that time on she has, without fault or negligence on her part, duly and timely prosecuted proceedings for the recovery and protection of her interests; and the court further finds that there has been no change whatever in the situation or rights of the defendants by reason of any delay whatever since the said final settlement, October 24, 1882.

"14. The court further finds that after the death of Harvey L. Kimberly, and before her death, the said Lucy Ann Kimberly received from *Daniel Lucius Kimberly*, as executor of his father's estate, certain moneys; but she did not receive the same upon any particular account, or from any particular fund, or on account of the income of said estate; and she took and received the same without any intent on her part to affirm or ratify the will of her late husband so far as the same made provision for her, or to deprive herself of the right to make and file her notice of election under the statutes."

For the appellants there were briefs by *Gary & Forward* and *Hooper & Hooper*, and the cause was argued orally by

*George Gary* and *Moses Hooper.* They contended, *inter alia,* that this proceeding is not a mere motion to vacate an order improvidently or irregularly made. It is a proceeding upon a petition in the nature of a bill of review. *Estate of Leavens,* 65 Wis. 440, 447, 450. It attacks a judgment of a court of record whose judgments as to matters within its jurisdiction are " as final and conclusive as the judgments of any other court." *Barker v. Barker,* 14 Wis. 131, 147. Practically it is a proceeding in equity, and the same principles apply. *Estate of Holden,* 37 Wis. 98. The court erred in not holding *Mrs. Beem* barred by lapse of time from filing her petition to set aside the order of distribution. This proceeding was not commenced until more than three years after she knew that the order had been made. In matters of limitation, where there is no statute binding a court of equity, the rule is for it to adopt the statute *in pari materia* which binds a court of law. Story's Eq. Jur. sec. 1521; *Horton v. Horner,* 14 Ohio, 443-4; *Tuttle v. Willson,* 10 id. 26, 27; *Paschall v. Hinderer,* 28 Ohio St. 577; *Neely's Appeal,* 85 Pa. St. 390; *Preston v. Preston,* 95 U. S. 203; *Kane v. Bloodgood,* 7 Johns. Ch. 111. Sec. 2832, R. S., providing that the court may, at any time within one year after notice thereof, relieve a party from a judgment, order, or other proceeding against him, through mistake, inadvertence, surprise, or excusable neglect, is a statute limiting the time within which such relief may be had. *Trilling v. Schumitsch,* 67 Wis. 186-8; *Schobacher v. Germantown M. F. Ins. Co.* 59 id. 86; *Knox v. Clifford,* 41 id. 458; *Whitney v. Karner,* 44 id. 567; *McKnight v. Livingston,* 46 id. 356.

Mrs. Kimberly by receiving benefits under the will estopped herself from claiming in opposition to it. She could take, under the will, one third of the income of the estate. This she might commence to receive immediately.

As widow she could not receive anything except upon order of the county court. She commenced soon after her husband's death to call on the executor for money. There was only one view in which she was entitled to it, and that was as donee under the will. See *Brown v. Pitney*, 39 Ill. 468; *Clark v. Griffith*, 4 Iowa, 405; *Wells v. Petree*, 39 Tex. 419; *Van Guilder v. Justice*, 56 Iowa, 669; *Stewart v. Stewart*, 31 N. J. Eq. 398; *Sigmon v. Hawn*, 87 N. C. 450; *Morrison v. Bowman*, 29 Cal. 346-8.

*Mrs. Beem*, by taking under the will, precluded herself from taking in hostility thereto. One who has accepted the bounty of a testator cannot defeat the will. *Hyde v. Baldwin*, 17 Pick. 308; *Smith v. Smith*, 14 Gray, 532; Story's Eq. Jur. secs. 1076-77; *Van Duyne v. Van Duyne*, 14 N. J. Eq. 52; *Jackson v. Ireland*, 3 Wend. 99; *Preston v. Jones*, 9 Pa. St. 456; *Smith v. Wells*, 134 Mass. 13; 2 Jarman on Wills (5th Am. ed.), 1-4; *Ditch v. Sennott*, 117 Ill. 362; *Morrison v. Bowman*, 29 Cal. 337; *Noe v. Splivalo*, 54 id. 209; *Barbour v. Mitchell*, 40 Md. 151; *Hawley v. James*, 16 Wend. 61; *Persons v. Shook*, 40 Barb. 144; *Bloomer v. Bloomer*, 2 Bradf. 339; *Thompson v. Carmichael's Ex'rs*, 1 Sandf. Ch. 387; *Blake v. Bunbury*, 4 Bro. C. C. 24. One who accepts a benefit under a will cannot even claim property which was his own, but which has in form been devised or bequeathed by the will to another. *O'Reilly v. Nicholson*, 45 Mo. 160; *Reaves v. Garrett's Adm'r*, 34 Ala. 558; *Moore v. Harper*, 27 W. Va. 362; *Fitzhugh v. Hubbard*, 41 Ark. 64; *Isler v. Isler*, 88 N. C. 581; *Clay v. Hart*, 7 Dana (Ky.), 6; *Smart v. Easley*, 5 J. J. Marsh. 214; *Groves v. Kennon*, 6 Mon. 635; *Weeks v. Patten*, 18 Me. 46, 47; *Smith v. Guild*, 34 Me. 443; *Brown v. Pitney*, 39 Ill. 468; *Stump v. Findlay*, 2 Rawle, 174; *Beall v. Schley*, 2 Gill, 200-202. It matters not that the claim which *Mrs. Beem* renounced by taking the bequest may prove more valuable than the

bequest. By taking the latter she made her election. *Brown v. Knapp*, 79 N. Y. 143; *Caulfield v. Sullivan*, 85 id. 159; *Wilson v. Townshend*, 2 Ves. Jr. 693.

The court erred in receiving the testimony of *Mrs. Beem* to show the execution of the election by Mrs. Kimberly. *Daniels v. Foster*, 26 Wis. 686; *Holcomb v. Holcomb*, 95 N. Y. 324–5; *Leather v. Ross*, 38 N. W. Rep. (Iowa), 516; *Wolfe v. Kable*, 107 Ind. 565–6.

For the appellant *Daniel L. Kimberly* it was contended further that the awarding of costs against him alone was an arbitrary exercise of discretion, violating every equitable consideration. *Cunningham v. Brown*, 44 Wis. 72; *Weston v. Olsen*, 55 id. 616. Doubtless the discretion vested in the court by sec. 2918, R. S., extends to discriminating between defendants who do not join in the same defense. *Nevil v. Clifford*, 63 Wis. 448. But here the defendants have made the contest jointly throughout.

*Joshua Stark* and *G. E. Sutherland*, for the respondent, argued, among other things, that the act of *Daniel L. Kimberly*, the executor, in taking the order cutting off *Mrs. Beem* was fraudulent, and hence a proper ground for setting aside the so-called decree of distribution. *Davis v. Cowdin*, 20 Pick. 510; *Foster v. Fifield*, id. 67; *Taylor v. Benham*, 5 How. 233; *Sherwood v. Wooster*, 11 Paige, 441. At that time he not only occupied a confidential family relation, but as executor he was clothed with the solemn obligations of a trustee holding funds for *Mrs. Beem* as *cestui que trust*. Immediately upon the widow's election to take under the statute, the executor takes one third part of the personal estate as trustee in trust for the widow. *Leach v. Leach*, 65 Wis. 294; *Campbell v. Reed*, 24 Pa. St. 498; *Clyce v. Anderson*, 49 Mo. 40; *Williams v. McClung*, 6 Heisk. (Tenn.), 443; *Merritt v. Merritt*, 62 Mo. 150; *Ferris v. Van Vechten*, 9 Hun, 12; *Noble v. Jones*, 35 Tex. 692; Pomeroy's Eq. Jur. sec. 1088; Perry on Trusts, sec. 94. And upon the

widow's death the executor holds it in the same capacity ·for. the widow's representative. *Nickerson v. Bowly*, 8 Met. 428. See, also, *Smiley v. Smiley*, 80 Mo. 44; Pomeroy's Eq. Jur. secs. 1052–3, 1058, 1077, 1079; 1 Story's Eq. Jur. secs. 322, 628; Perry on Trusts, sec. 168; *Pulliam v. Pulliam*, 10 Fed. Rep. 26; *Horn v. Lockhart*, 17 Wall. 570.

When the widow takes by election after the death of her husband her estate is not acquired by waiver of the will (*Atherton v. Corliss*, 101 Mass. 40, 45), but has continued every moment from the commencement of the marital relation. Her notice of election has created no new estate, and hence takes nothing from the heir to which the heir has ever been entitled. *McCallister v. Brand's Heirs*, 11 B. Mon. 370, 395. The right of election is of the highest sort, and cannot be taken from the widow. *Wilber v. Wilber*, 52 Wis. 297–8; *Hardy v. Scales*, 54 id. 457. And great liberality is exercised in favor of the widow in the construction to be put upon her acts. See *Wake v. Wake*, 1 Ves. Jr. 335; *Reynard v. Spence*, 4 Beav. 103; *Dixon v. McCue*, 14 Grat. 540; *Reaves v. Garrett's Adm'r*, 34 Ala. 558; *McCallister v. Brand's Heirs*, 11 B. Mon. 370; ·*Phelps v. Phelps*, 20 Pick. 556; *Bretz v. Matney*, 60 Mo. 444; *Frey's Estate*, 52 Cal. 658; *Evans' Appeal*, 51 Conn. 435; *Wright v. De Groff*, 14 Mich. 164; *Ramsour v. Ramsour*, 63 N. C. 231; *Simonton v. Houston*, 78 id. 408; *Metteer v. Wiley*, 34 Iowa, 214; *Sanford v. Sanford*, 58 N. Y. 69, 73; *Macknet v. Macknet*, 29 N. J. Eq. 54; *U. S. v. Duncan*, 4 McLean, 99; *Bradfords v. Kents*, 43 Pa. St. 474. The widow's share, which is fixed by the notice of election, is a present interest in property. It is assignable in her life-time, and passes to her representatives in case of her death. *Sullings v. Richmond*, 13 Allen, 277; *Nickerson v. Bowly*, 8 Met. 424; *Wigley v. Beauchamp*, 51 Mo. 544. The widow's share vests on her filing her notice of election, notwithstanding her death afterward and before it is ascertained. *Greiner's Appeal*, 103 Pa. St. 89;

*Moore v. Gordon,* 24 Iowa, 158, 162. On the death of the widow before reducing her share to possession, her representatives stand in her shoes, and are necessary parties to any final settlement. *Grant v. Bodwell,* 78 Me. 460; *McMullen v. Brazelton,* 1 South. Rep. (Ala.), 778; Schouler on Ex'rs, sec. 507, note; *Reynolds v. Reynolds,* 11 Ala. 1023; *Thomas v. Dumas,* 30 id. 83; *Hayward v. Hayward,* 20 Pick. 519.

The following cases have points in common with the case at bar, and among them is found authority covering every point involved in this action. *Loring v. Steinman,* 1 Met. 204; *Gibbons v. Shepard,* 2 Demarest, 247; *Wistar's Estate,* 13 Phila. 242; *Kock v. Woehr,* 3 Demarest, 282; *Harrison v. Harrison,* 9 Ala. 478; *Clayton v. Wardell,* 2 Bradf. 1; *Petly v. Wafford,* 11 Ala. 143; *Campbell v. Reed,* 24 Pa. St. 498; *Arnold v. Spates,* 65 Iowa, 570; *Baker v. O'Riordan,* 65 Cal. 368; *Sullivan v. Andoe,* 6 Fed. Rep. 641; *Clyce v. Anderson,* 49 Mo. 37; *O'Neil's Appeal,* 55 Conn. 409; *Estate of Leavens,* 65 Wis. 440; *David v. Frowd,* 1 Mylne & K. 200; *Sawyer v. Birchmore,* 1 Keene's Ch. 392; *S. C.* 2 Mylne & C. 611; *Williams v. Gibbes,* 17 How. 248, 254.

In order for Mrs. Kimberly to become estopped so that she could not file her notice of election, it must appear that, with full knowledge of the condition and amount of Harvey Kimberly's estate and of her interest in it under the will, she deliberately did some act declaratory of her choice to take under the will, which was inconsistent with an election to take under the provisions made by law, and then she must so take or act under the will that there will be some injury to the estate or injustice to the legatees to allow her to renounce. *Sill v. Sill,* 31 Kan. 248; *Sanford v. Sanford,* 58 N. Y. 69–73; *Reaves v. Garrett's Adm'r,* 34 Ala. 558; *Bretz v. Matney,* 60 Mo. 444; *O'Brien v. Elliot,* 15 Me. 125; *Tooke v. Hardeman,* 7 Ga. 20; *Duncan v. Duncan,* 2 Yeates, 302; *Wilson v. Moore,* 86 Ind. 244; *Millikin v. Welliver,* 37 Ohio St. 460.

The notice of election having been filed by an attorney, his authority is presumed. *Shroudenbeck v. Phœnix F. Ins. Co.* 15 Wis. 632, 634. When a paper executed by a party is found filed, the court presumes that the party executing it filed it. *Boyd v. Wyley*, 18 Fed. Rep. 355; *Davis v. Mills*, 18 Pick. 394; *Rosenthal v. Maryland Brick Co.* 61 Md. 590; *Billings v. Stark*, 15 Fla. 297; *Hartford L. Ins. Co. v. Gray*, 80 Ill. 28. As by analogy it is held that the possession of an instrument is *prima facie* evidence that it was duly delivered. *Whitaker v. Salisbury*, 15 Pick. 534, 542; *Goodwin v. Ward*, 6 Bax. 107; *Roberts v. Swearingen*, 8 Neb. 363; *Blair v. Howell*, 68 Iowa, 619; *Butrick v. Tilton*, 141 Mass. 93, 95; *Reed v. Douthit*, 62 Ill. 348. And the finding of a deed recorded raises the presumption that it was duly delivered by the grantor. *Kille v. Eye*, 79 Pa. St. 15; *Ross v. Campbell*, 73 Ga. 309; *Lawrence v. Farley*, 24 Hun, 293; *Jackson v. Perkins*, 2 Wend. 308; *Gilbert v. North Am. F. Ins. Co.* 23 id. 43; *Metcalfe v. Brandon*, 60 Miss. 685; *Alexander v. Alexander*, 71 Ala. 295; *Walton v. Burton*, 107 Ill. 54; *Kerr v. Birnie*, 25 Ark. 225. And retaining possession of an instrument after execution and before delivery or recording creates no presumption against it. *Moore v. Giles*, 49 Conn. 570. The question of laches cuts no figure, for the reason that the relation of the parties is in no manner changed because of the delay. It is only when the rights or liabilities of parties have changed, or something has been done because of or depending upon former acts, or there is a fluctuation in the value of securities involved, that delay in seeking redress is ground for denying relief. *Davis v. Cowdin*, 20 Pick. 510, 513; *Hayward v. National Bank*, 96 U. S. 617, 618; *Sullivan v. P. & R. R. Co.* 94 id. 811; *Richardson v. Richardson*, 9 Pa. St. 428; *Sedlak v. Sedlak*, 14 Oreg. 540; *Montgomery v. Cloud*, 27 S. C. 188; Story's Eq. Jur. secs. 1520, 1520d. This court, however, has already virtually said that in such a case any

Beem vs. Kimberly and another.

delay inside the statute of limitations is no defense. *O'Dell v. Rogers*, 44 Wis. 136; *Sherwood v. Sherwood*, 45 id. 357. Sec. 2832, R. S., has no application. *Baker v. O'Riordan*, 65 Cal. 368.

TAYLOR, J. The learned counsel for the appellants, in their briefs and in their oral arguments in this court, attack the findings in regard to the genuineness of the signature to the notice of the election filed by Lucy Ann Kimberly in the county court of Winnebago county, and also the finding that she caused it to be filed in said court. After a careful consideration of the evidence upon which these findings are based, we are not only of the opinion that the findings are supported by the evidence, but that the preponderance of the evidence is in favor of such findings. It is urged that because two witnesses on the part of the appellants, who are apparently impartial witnesses and experts, testified, from a comparison of the admitted signatures of Mrs. Lucy Ann Kimberly with the signature of the notice of election, that in their opinions the signature to such notice of election was not her genuine signature, the court should have found that the signature was not the signature of Mrs. Kimberly, but was a forgery. One of the witnesses relied upon is Frank Heilig. He testifies that he is an expert as to signatures, and says, after being shown several signatures purporting to be the signatures of Mrs. Lucy Ann Kimberly: "All these signatures were not written by the same party, that is, I don't think they were. I think I should pay them all except the one marked 'Exhibit P.'" Exhibit P is the notice of election. Thomas Daly, the other expert, testified that, "I doubt very much if that is the genuine signature of the person who made the other signatures." Upon cross-examination both these witnesses seem to place their opinions mainly upon the fact that in the signature to the notice of election the lower part of the "y"

is not looped as they are in the other signatures.  To me it seems that, when we consider the circumstances under which, it appears from the evidence, it is claimed Lucy Ann Kimberly signed the notice of election, these defects in the signature are of little or no importance in determining its genuineness.  The evidence shows that when it is claimed she signed she was very feeble, lying on a lounge, had to be supported while she signed, and signed on a book or school atlas lying on her knees.  Under such circumstances it is evident there would be a difference between her signature and her ordinary signature made in a convenient place and when in good health.  The omissions in the loops of the " y " might well be accounted for by reason of her position and weakness at the time.  The defects are certainly not evidence of any attempted forgery by an expert at the business of forgery.  They are such palpable defects that any person attempting to imitate the signature could not but observe and correct them.  It is useless, however, to give our reasons for thinking the signature genuine.  The court below has found in favor of the genuineness of the signature, and there certainly is no such want of evidence to support the finding as would justify this court in reversing that finding.  See *Daniels v. Foster*, 26 Wis. 686, 693.

The finding that Lucy Ann Kimberly caused her notice of election to be filed in the office of the county court of Winnebago county on the 24th day of April, 1882, we are very clear is sufficiently sustained by the evidence.  In the first place, admitting that the signature is genuine, and the paper is afterwards found in the office of said court duly filed therein as one of the papers or documents belonging to the records of said court, nothing else appearing in the case to cast suspicion upon the paper or its filing, the presumption of law is that it was properly filed, and the burden of proof is upon the party denying the fact of such filing.  *Boyd v. Wyley*, 18 Fed. Rep. 355, 358, 359, and

other cases cited in respondent's brief; secs. 2172, 4140,
R. S.   There is, however, other evidence in the case suffi-
cient to show that the filing was at the request of the
widow.   The paper was delivered for filing by a reputable
attorney, and in the absence of all proofs to the contrary it
must be presumed that he was authorized to file the same
on behalf of the widow.   The filing of this notice of elec-
tion is made by sec. 2172, R. S., a part of the proceedings
in the probate of the will and the administration of the es-
tate of the deceased testator, and when filed it becomes a
part of the record of such proceedings as fully as any other
paper in the case.   The authority of the attorney filing the
same should be presumed until the want of such authority
is made to appear by proper evidence.   *Shroudenbeck v.
Phœnix F. Ins. Co.* 15 Wis. 632.

It is also alleged as error that the court improperly per-
mitted *Mrs. Beem*, the respondent, to testify that she saw
her mother sign the notice of election not to take under the
will.   Admitting that such evidence was improperly ad-
mitted, such error on the part of the court does not neces-
sarily make it the duty of this court to reverse the judg-
ment, if the other evidence in the case, which was properly
admitted, sustains the finding of the court upon the gen-
uineness of the signature of Mrs. Kimberly.   We have no
hesitation in saying that if all the evidence of the respond-
ent on the subject of the signature of Mrs. Kimberly was
rejected, still there is sufficient to sustain the finding of the
court.   But this court has decided that it was competent
for *Mrs. Beem* to testify as to her opinion of the genuine-
ness of the signature of Mrs. Kimberly, especially if her
opinion was based upon her general knowledge of her
handwriting, and not upon the fact that she saw her write
the particular signature in question.   See *Daniels v. Foster*,
26 Wis. 693.   *Mrs. Beem* was the granddaughter of Mrs.
Kimberly and had been brought up by her as her child in

her family, and, if any one was competent to give an opinion as to the genuineness of her grandmother's signature, she would seem to be competent.

It is also urged that it was error to exclude certain evidence offered as to the manner in which Judge HAMILTON wrote his name. We are unable to see the pertinency of the evidence offered; nor do we see the propriety of the offer of a letter purporting to have been written by *Mrs. Beem*, but which had never been sent to any one, and, so far as appears, had never been out of her possession until called for and produced by her on the trial of this action. The paper offered and rejected appears to have been a draft of a letter written by *Mrs. Beem*, an exact copy of which was made in a different handwriting, and sent by her to *Mr. Kimberly*. The draft had some erasures in it, which do not appear in the letter sent. It seems the offer was made for the purpose of showing these erasures. We think it was properly rejected. The original draft is in the record, and was exhibited to this court upon the argument. We cannot see how the admission of it as evidence in the case could have aided the appellants.

The learned counsel for the appellants contend, with great earnestness, that Mrs. Kimberly, by receiving from the executor of her husband's estate some $900, which was necessary for her support during the five months next after the death of the testator, is estopped from electing to take the share of the testator's estate which the law gives her, and is bound by the terms of the will. The provision for the widow in the will is in the following language: "*Second.* I do hereby give, devise, and bequeath to my wife, Lucy Ann Kimberly, the rents, issues, and profits of one third of all the real and personal estate of which I shall die seized and possessed, during her natural life, to be used and disposed of for her sole use and benefit, as to her shall seem best; and I do hereby will and direct that one third of my

said estate, both real and personal, of which I shall die seized, shall be leased and invested in such interest-bearing securities as my said executrix and executors shall deem safest and most desirable." There is no evidence in the case that at the time any part of this money was received from the executor by Mrs. Kimberly such executor had segregated the one-third of the estate, and leased or invested the same or any part thereof for the benefit of the widow, and that she, knowing such fact, had requested the executor to pay over to her this money as a part of that income, secured to her by the will. In fact the contrary is made to appear. This money was paid before any segregation of the estate had been made, and was paid over upon a request made by the widow that she might have something for her present support. It seems to us little short of an absurdity to say that the widow should be estopped from making her election to take what she was entitled to by law of the estate of her deceased husband, because her necessities required that she should have something for her sustenance while she was deliberating whether she would take under the will or under the law. The law having given the widow one year after the death of her husband in which to elect whether she will take under the will, there must be a very clear and strong case made against her right to exercise the right at any time within the year. If she can bar herself of that right before the expiration of the year, it must be done with a full knowledge on her part that she is giving up such right. Her acts must at least be entirely inconsistent with her right to subsequently make such election. In the case at bar it is just as consistent for her to receive what she did from the executor, if she intended to claim what the law gave her, as if she intended to take under the will, and it is evident the executor would just as readily have given her the money asked in the one case as in the other. In either case the money she received

would be but a small portion of what she was entitled to. The following authorities clearly show that the widow had done nothing in this case to estop her from making her election to take what the law gave her: *Millikin v. Welliver,* 37 Ohio St. 460; *Sill v. Sill,* 31 Kan. 248; *Sanford v. Sanford,* 58 N. Y. 69, 73; *Bretz v. Matney,* 60 Mo. 444; *O'Brien v. Elliot,* 15 Me. 125; 2 Williams on Ex'rs, top p. 1558, note *g; Cox v. Rogers,* 77 Pa. St. 160; *Spread v. Morgan,* 11 H. L. Cas. 588; *Padbury v. Clark,* 2 Macn. & G. 307; *Whitridge v. Parkhurst,* 20 Md. 62; *Bradfords v. Kents,* 43 Pa. St. 474.

It is further insisted by the appellants that it is too late to attack the order of the county court of Winnebago county, which assigned all the residue of the estate to the appellants. If it be admitted that the determination of the county court is conclusive upon all parties until set aside for cause, still we are of the opinion that the order was obtained by the appellants under such circumstances that it ought to be set aside because fraudulently obtained as against the respondent. The findings of the circuit court as to what facts were known to the executor when he obtained the order of the county court distributing the residue of the estate of his testator are fully sustained by the evidence. The material facts may be stated briefly as follows: He knew that Mrs. Lucy Ann Kimberly, the widow of his testator, had legally declined to take the provisions tendered her by the will of the testator; he knew, therefore, that she was entitled to one third of the net personal property of deceased which was in his hands as executor of the estate of said deceased; he knew that the widow had died, leaving a will, which had been probated, by which all the personal and real estate of the said widow had been duly devised and bequeathed to the respondent in these proceedings, and that she made claim to all that part of the estate of his testator in his hands which by law belonged to the widow, Lucy Ann

Kimberly; he knew where the respondent resided, and had been in correspondence with her. Previous to applying for the settlement of his accounts as executor he had not intimated to the respondent that he intended to contest the right of the deceased widow of Harvey L. Kimberly to the one-third part of the personal estate of his testator in his hands as executor, nor that he intended to contest the right of this respondent to receive the share of the estate which belonged to said widow; and upon his application to the court for an order distributing the estate he made no proof showing his or his brother's right to the whole of said estate, nor did he bring to the notice of the county court the fact that the respondent, as the legatee of the deceased widow, claimed any part of said estate.

Upon this state of the facts it seems to us that the circuit court justly found that the order distributing the entire estate to the appellants was fraudulently obtained as to this respondent. If we consider the relation which the executor bore to the widow and to her legatee, we think this finding is eminently just. Under the statute the widow's right to the one-third share of the personal property of her deceased husband, belonging to him at the time of his death, cannot be divested by any act of the husband, by his will or otherwise. All he can do is to offer her by his will something in place of the estate secured to her by the law, and if she accepts it she cannot claim the right given her by the law; if she refuses to accept it within the time and in the manner prescribed by law, then she takes the one-third of the personal estate of her husband by virtue of the law, and not in any way under the will of her husband, and she is entitled to have her share distributed to her by the proper court. Under our system the executor of the will, to whom letters of administration with the will annexed are issued, takes possession of all the personal estate of the testator, whether the same be disposed of by the will or

not, and it becomes his duty, as such administrator with the will annexed, to settle the estate and distribute the same in the manner prescribed by law. See subd. 6, sec. 3935, R. S.

The executor, after he knew that the widow had elected not to take under the will of her husband, became her trustee as to her share of the personal estate, and must be held to an honest discharge of his duties as such trustee. This interest of the widow is assignable in her life-time, and she may bequeath it by will. *Sullings v. Richmond*, 13 Allen, 277; *Wigley v. Beauchamp*, 51 Mo. 544; *Greiner's Appeal*, 103 Pa. St. 89; *Moore v. Gordon*, 24 Iowa, 158, 162; *Reynolds' Adm'rs v. Reynolds' Distributees*, 11 Ala. 1023; *Thomas v. Dumas*, 30 Ala. 83; *Hayward v. Hayward*, 20 Pick. 519. Under the evidence in this case the executor, as trustee for the estate of the widow, obtains from the court, without establishing his right by evidence, without even calling the attention of the court to the fact that some one was making a claim adverse to his rights to a part of the estate, an order transferring this trust estate to himself, under a claim that he is the rightful owner. Had he stated to the court that there was an honest claim made by this respondent to the one-third of the estate in his hands, and that she had no notice in fact of his demand for the order of distribution of that third to himself and his brother in derogation of her rights, it seems to us evident that the court should and would have directed him to give her personal notice of his application, so that she could have appeared and asserted her right if she had any. The wrong of the executor consists in the fact that while he held property in his hands as a trustee for the respondent, he took a proceeding in court with the purpose of depriving his *cestui que trust* of her rights. He did this without any actual notice to her, without even informing the court of her rights, and having good reason to know that she was in fact ignorant of his proceedings. Such action by a trustee cannot

be sustained by any court. We think, under the evidence in this case, the executor was as much a trustee in the law of the one-third of this estate after the order of distribution had been made as he was before. If it be necessary for the respondent, under the circumstances, to give any reason for not appearing before the county court and there making her claim, we think the evidence shows a sufficient reason. That this order of distribution ought to be set aside as fraudulently obtained is amply sustained by the following authorities, cited in the brief of the respondent: *Davis v. Cowdin*, 20 Pick. 510; *Foster v. Fifield*, 20 Pick. 67; *Leach v. Leach*, 65 Wis. 284, 294; *Campbell v. Reed*, 24 Pa. St. 498; *Clyce v. Anderson*, 49 Mo. 40; *Nickerson v. Bowly*, 8 Met. 428; *Pulliam v. Pulliam*, 10 Fed. Rep. 26; *Loring v. Steineman*, 1 Met. 204; *Arnold v. Spates*, 65 Iowa, 570; *Baker v. O'Riordan*, 65 Cal. 368; *Sullivan v. Andoe*, 6 Fed. Rep. 641; *O'Neil's Appeal*, 55 Conn. 409; 2 Pom. Eq. Jur. secs. 1052, 1058, 1077.

That the respondent was guilty of any laches after she was advised as to what had been done by the executor in obtaining an order distributing the whole estate to the appellants, we think is clearly negatived by the evidence. The evidence shows that she at once took legal advice in regard to the matter, and pressed the commencement of the proceedings upon her counsel from the commencement. If there was any unnecessary delay it must be laid at the door of her attorney and not to her. We think that the appellants were not prejudiced by the delay in this matter. Nothing has been done with the estate since the order of distribution which has in any way altered the relations of the parties or prejudiced the rights of the appellants. We think the circuit court was right in holding that the respondent had not forfeited her rights by unnecessary delay in commencing this action.

It is also claimed by the learned counsel for the appel-

lants that the respondent is estopped from claiming that part of the estate which was bequeathed to her by her grandmother, which came to the grandmother from her deceased husband, Harvey L. Kimberly. It is insisted that because the respondent, *Mrs. Beem*, was a legatee in the will of Harvey L. Kimberly in the sum of $1,000, and received such legacy from the executor of said deceased before the widow made her election to take what the law gave her, instead of taking under the will, she cannot now, as against the other legatees in the will, take any of the estate of said deceased which came to her by bequest or descent from her grandmother, the widow of said Harvey L. Kimberly. We are clearly of the opinion that there is no rule of law which will deprive the respondent from taking and holding the property bequeathed to her by her grandmother. The bequest made to her by Harvey L. Kimberly is in no way connected with her claim to the estate of her grandmother. The grandmother does not derive the estate from any bequest in the will of Harvey L. Kimberly, nor from any other person taking under the will, but she took it as an estate given to her by the laws of the state, in hostility to the expressed desire of her husband that she should take a different estate in his property.

When the widow filed her notice that she refused to take under the will, she took the one-third of the personal estate of her husband by a legal title superior to any right of her deceased husband or to any claim that the other legatees in the will might have to it. The property went to her as her absolute estate, and that estate was an absolute estate which she could sell, assign, or bequeath as freely as any other owner. She had all the incidents of ownership which any other owner of property has. She could do with it as she pleased. The rule that one taking a benefit under a will cannot contest the title of some other person to property which has been devised or bequeathed to such other

person by the same will does not apply to the person who claims property derivatively from some person not taking title thereto under such will. This was decided as long ago as 1797 by the court of chancery in England, and that decision has been received as the true doctrine in the English courts down to the present time. *Earl of Darlington v. Pulteney*, and *Lady Cavan v. Pulteney*, 3 Ves. Jr. 384. This case was referred to as good law in the cases of *Grissell v. Swinhoe*, L. R. 7 Eq. 291, and *Cooper v. Cooper*, L. R. 7 H. L. 53, 59, 69, 79, L. R. 6 Ch. 19–21.

In the case of *Earl of Darlington v. Pulteney, supra,* the Lord Chancellor said "that when Mrs. Pulteney made her election, which the court decreed she was bound to do, and the result was that she took under the will of Sir William Pulteney, the estate she so took was completely evicted, and never could revert to the uses of the will or be affected by any of clause of that will. The rights of all those taking that estate must be derived in some degree from her right, which was an absolute right of property,— a right to say, 'This is my estate. It was not capable of being devised by General Pulteney. I repudiate all right he has given me by his will, and take that estate *jure meo* as the law gives it to me.' The consequence is she may do with it as she pleases, and all the rights incident to her estate must be preserved. Her husband's estate is an emanation from hers. . . . That estate was as much blotted out of the will as if the testator had himself struck completely out of it all that regards that estate. We have no right to open the will, or talk of what General Pulteney did with regard to that estate, the moment an absolute owner says: 'It is my estate. I have made my election to take it.' "

The facts in that case are very much like the facts in the case at bar. In that case the husband, Gen. Pulteney, and his wife were both mentioned as beneficiaries in a will in

which the testator attempted to devise to other parties an estate in fee, in which the wife had an estate in tail hostile to the provisions of the will. The wife elected not to take any benefits under the will, but to hold her estate in tail to the lands attempted to be disposed of by the will to other parties. The husband took the provision made for him by the will. Afterwards his wife died, and he claimed the right as tenant by curtesy of his wife to the same estate which the testator had attempted to dispose of by his will. The intended beneficiaries under the will claimed that he, having received the provision made for him by the will, could not hold the estate of his wife as a tenant by the curtesy. The court held he could hold such estate, mainly because he derived the estate from his wife, who had elected to take it instead of the provisions made for her by the will. It is substantially this case. Here the respondent and the deceased grandmother were named as beneficiaries under the will of Harvey L. Kimberly. The grandmother renounced her rights under the will, and claimed the estate which the law gave her. The respondent took her $1,000 legacy. Afterwards the grandmother and widow died and bequeathed the estate she had in her husband's property to the respondent. As was said by the learned English chancellor, when the widow elected to take what the law gave her instead of the provision made for her in the will, so far as all rights of parties mentioned in the will were concerned it was the same as though the testator had himself stricken out of the will the provision made therein for his wife. Had the will of Harvey L. Kimberly made no provision whatever for his wife, no one, I suppose, would argue that a beneficiary under such will might not receive the benefits of the will, and afterwards take, by descent, assignment, or bequest, the estate of the widow. See, also, upon this subject, 2 Jarm. Wills, 5, note 3; *Horton v. Mer-*

*cier*, 31 Ga. 225; *Carder v. Commissioners*, 16 Ohio St. 353; *Crostwaight v. Hutchinson*, 2 Bibb, 408; *Bowen v. Bowen*, 34 Ohio St. 164.

It is said by the learned counsel for the appellants that *Mrs. Beem* could not believe that Harvey L. Kimberly would have given her and her husband together $3,000, if he could have foreseen that she would claim to share the residue with his sons. It is, however, very plain that he did bequeath her that sum, knowing that his widow had the right to claim absolutely one third of his estate, and that, having made such. claim, she would have the lawful right to dispose of it as she saw fit; and there can be no claim that, because the widow refused to take the provisions made for her, the bequest to *Mrs. Beem* and her husband was avoided. Knowing the rights of his wife, if the testator intended to limit his bounty to his wife's granddaughter upon the condition that his wife accept the provision for her in the will, it would have been an easy thing for him to have said so in his will. He failed to say so, and the fact that the widow did not choose to take under the will in no way affects the right of the respondent to her $1,000. The deceased could not know, neither could the respondent know, that she would be benefited by the election of the wife and widow to take what the law gave her rather than the provision in the will. It appears to us that she stands in the same relation to the action of her grandmother that any other legatee who was in no way related to the widow would stand. The testator having given the respondent $1,000 by his will, with full knowledge that she would be entitled to receive it whether his widow accepted the provisions of the will made by him for her, or whether she took the one-third of his estate which the law gave her, it cannot be said such gift was intended as any compensation to her for her release of some possible right which she might afterwards acquire to that part of his estate which

came ,to the widow by law and not by the will. There being no intention on the part of the testator to limit the right of the respondent as to her $1,000 legacy on the condition that all the residue of his estate should go to his two sons, no case for an election is made out. *Beall v. Schley*, 2 Gill, 181, 199. The will of Harvey L. Kimberly presented no case for an election by the respondent. At the time the will was made, and at the time it took effect, she had no more interest in any of the property devised and bequeathed by the testator to his two sons than any other stranger. She had nothing in that property to release, and so could release nothing by taking her legacy under the will. See 2 Story's Eq. Jur. §§ 1075, 1076, and cases cited; *Havens v. Sackett*, 15 N. Y. 365, 369; Jarm. Wills, 385.

We think no case can be found in which it has been held that a legatee or devisee in a will cannot take and hold any other property attempted to be devised or bequeathed by the testator in the same will to some other person when such legatee does not make a subsequent claim to such other property by virtue of some title in himself at the time the will takes effect, or unless he has entered into the possession of such property, claiming to make such entry by virtue of a title given to him by the will before making any adverse claim thereto. This exception was made in the case of *Stump v. Findlay*, 2 Rawle, 168, 174, cited by the learned counsel for the appellants. All that was decided in that case was that a devisee of a life-estate in land, when the remainder was given by the same will to other persons, could not, after entry as life-tenant under the will, dispute the title of the remainder-man named in the same will, and that a purchase by the tenant of the life-estate of an adverse title, while in the possession of such life-estate under the will, would inure to the benefit of his life-estate, and also to the benefit of the persons entitled to the remainder under the will.

AUGUST TERM, 1888.                    375

Winstanley, Adm'r, etc. vs. The Chicago, Milwaukee & St. Paul R. Co.

It is said that it was error to charge the costs to one of the defendants. In equity cases the question of costs is very much in the discretion of the court. The appellant against whom the costs in this case were charged by the circuit court was the party especially chargeable with the wrong done in this case. It does not seem inequitable, therefore, that he should be charged with the costs of the proceeding.

*By the Court.*— The judgment of the circuit court is affirmed.