ESTATE OF POULSEN: POULSEN, Appellant, v. FIRST NATIONAL BANK & TRUST COMPANY OF RACINE, Executor, Respondent.

*No. 167. Argued January 31, 1972.—Decided February 29, 1972.*
(Also reported in 194 N. W. 2d 593.)

For the appellant there was a brief by *Weber, Gerard & Bonk* of Racine, and oral argument by *Myron J. Bonk.*

For the respondent there was a brief by *Konnak, Constantine & Krohn* of Racine, and oral argument by *Harold A. Konnak.*

HALLOWS, C. J. The sole issue is whether the finding by the trial court that the executor had not committed fraud so as to warrant opening up the estate is supported by the evidence. This estate could not be reopened under sec. 269.46, Stats.,[1] because there is no allega-

---

[1] "269.46 **Relief from judgments, orders and stipulations; review of judgments and orders.** (1) The court may, upon notice and just terms, at any time within one year after notice thereof, relieve a party from a judgment, order, stipulation or other proceeding against him obtained, through his mistake, inadvertence, surprise

tion of mistake, inadvertence, surprise, or excusable neglect, and the application was not made within one year of the notice of judgment. Fraud is a ground for reopening an estate and has no such arbitrary rule, except perhaps if sec. 893.19 (7) is applicable, but may be asserted and granted on an equitable ground. *Estate of Strange* (1958), 3 Wis. 2d 104, 108, 87 N. W. 2d 859; *Estate of Baumgarten* (1961), 12 Wis. 2d 212, 222, 107 N. W. 2d 169. It makes no difference whether the fraud is intrinsic or extrinsic as Wisconsin has not made such distinction for the purpose of reopening a proceeding. *Weber v. Weber* (1952), 260 Wis. 420, 51 N. W. 2d 18; *Hartenstein v. Hartenstein* (1963), 18 Wis. 2d 505, 118 N. W. 2d 881; *State Central Credit Union v. Bayley* (1967), 33 Wis. 2d 367, 147 N. W. 2d 265.

Basically Mrs. Poulsen contends the executor is guilty of fraud in not selling the stock in her husband's estate: (1) So that it could keep up the value of Western Publishing and thus protect the holdings of the bank officials, and (2) in overvaluing the stock in the final account and in her receipt, which misled her and the court. Mrs. Poulsen in her brief takes each finding of fact and attempts to show it is not supported by the evidence, but a careful review of the record convinces us the trial court's findings are supported. The evidence, while showing at the most mismanagement or lack of prudent judgment by a professional fiduciary, falls short of either actual or constructive fraud.

A detail of the evidence would serve no purpose but to prolong this opinion. The will provided the executor could sell or retain the stock in the estate. Thus if the

or excusable neglect and may supply an omission in any proceeding. In addition to the required affidavits, all motions to vacate a judgment entered upon default or cognovit and to obtain a trial upon the merits shall be accompanied by a proposed verified answer disclosing a defense."

executor retained the stock, the retention must be in the best interest of the estate and if it sold the stock, the sale should be at a time the executor could obtain the best price. In dealing with the stock market, a fiduciary is not omniscient, but he must act as an ordinarily prudent man would under the circumstances. The stock at the time of the testator's death was speculative and greatly overpriced, selling at 40 times earnings, but the evidence shows Mrs. Poulsen did not want to sell the stock. However, during the administration, it was necessary to sell stock in order to pay the expenses of the estate. Eight hundred shares were sold to pay an indebtedness at the bank and later 450 shares were sold, for a total loss of $25,586.08 from the appraised value. During this time the stock market declined and significantly the earning record of Western Publishing also declined. In delaying the sales, the executor followed the advice of an investment analyst who reported in May of 1961 the Western Publishing stock was an attractive investment. A year later, in November of 1962, when the stock declined to $25 a share, the analyst reported he had revised his outlook and the stock might take a while to regain its value. While a fiduciary may be charged with mismanagement although he follows the advice of an investment analyst, such reliance may negate bad faith on the part of the fiduciary. It is true, three of the 19 directors of the bank were also directors of Western Publishing and held shares therein, but it was not possible that the number of shares held by the estate could affect the price of the Western Publishing stock to any appreciable extent. And, there is no evidence these directors influenced the retention of the stock by the executor.

The failure to diversify the assets was largely attributable to Mrs. Poulsen's refusal to approve the sale of the stock. There is testimony she did not want the

stock disposed of; that she and her son wanted to keep the stock so the son could get a job at Western Publishing. It is now argued the executor should not have followed Mrs. Poulsen's wishes because she was uninformed and the executor had knowledge of the stock it withheld from her. The evidence does not support this argument. Mrs. Poulsen cannot claim a breach of fiduciary duty when she participated in it. *Will of Mueller* (1965), 28 Wis. 2d 26, 135 N. W. 2d 854; *Estate of Grotenrath* (1935), 217 Wis. 109, 258 N. W. 453. The will gave the executor the right to sell or retain the stock and the election to take outside the will did not change that right. *Beem v. Kimberly* (1888), 72 Wis. 343, 39 N. W. 542; *Estate of Van Epps* (1968), 40 Wis. 2d 139, 161 N. W. 2d 278. But since Mrs. Poulsen had a direct interest in the stock, her wishes to keep or to sell the stock should be given some weight by the executor. Hindsight, of course, is always better than foresight and often is the basis of a lawsuit. But neither by hindsight nor foresight do we find fraud on the part of the executor in failing to sell the stock at a price which later became the peak price in the market.

Mrs. Poulsen argues the executor committed fraud in closing the estate and in listing in the final account the unsold stock at the appraised value and in obtaining from her a receipt for her share of the unsold stock at the appraised value when at that time the stock was worth considerably less. A strict liberal reading of sec. 317.02, Stats.,[2] might lead to this way of accounting, and it is a customary practice although misleading to a lay person. This section is to be read as requiring

---

[2] "317.02 **What to account for as to sales; profit and liability.** Every executor and administrator shall account for the personal estate of the deceased at the appraised value thereof, excepting . . . ."

substance, not form. It is misleading to assign specific property with reference to unrealistic values in a receipt unless such values are clearly designated for that purpose. However, Mrs. Poulsen can hardly complain; she knew the stock no longer was worth the appraised value and was not misled by the receipt. We find no merit in the argument as a basis for fraud that the final account incorrectly listed a sale of 1,800 shares at $57 each when it should have listed 800 shares. This was a typographical mistake; the amount of loss in dollars was correct, and the evidence shows Mrs. Poulsen knew the sale had been for only 800 shares.

While we find no justification for delaying the filing of the inventory, which was prepared on May 26, 1961, until March 14, 1963, just before closing the estate, the delay was not fraudulent. The trial court found this delay was due to an attempt to settle federal inheritance tax on a lesser value than that stated in the inventory. While this may be an explanation, it is not a justification. By sec. 312.01, Stats., an inventory must be returned to the court within three months of the appointment of the personal representative. Nor is there merit in the claim the executor scheduled the final hearing to coincide with Mrs. Poulsen's entrance in a hospital for surgery. The executor had no knowledge of her anticipated surgery. Nor do we think the SEC prohibitions on insider trading, 15 USCA, sec. 78j (b), p. 435; 17 CFR, sec. 240.10b-5, p. 300, have any application to this case.

In this decision we do not approve the actions of the executor or the guardian *ad litem* in reference to the stock. But any claim of mismanagement or adequate representation is not in issue. We decide only there was no fraud as a basis of reopening the estate in order to raise such questions.

*By the Court.*—Judgment affirmed.