MANGAN, Respondent, vs. SHEA and another, Administrator, Appellants.

*October 28—November 17, 1914.*

*Mortgage of supposed interest of heir: Subsequent discovery of will: Payment from income of property held in trust: Equity: Circuit and county courts.*

1. In the mutual belief that defendant S. had a vested interest in certain land as an heir of his deceased sister, plaintiff lent money to S., and S. gave his note therefor and a mortgage of his supposed interest in the land. Afterwards a will was discovered by which the sister left all her property to a trustee, to be converted into money and invested; and the income of the greater part thereof was to be paid by the trustee to S. There was nothing in the will to prevent S. from alienating his right to such income. In an action to charge the property in the possession of the trustee with a lien to satisfy the debt of S. to plaintiff, it is *held* that a court of equity may do justice between the parties, and if, as alleged, the loan was made to supply S. with the necessaries of life, which the testatrix evidently contemplated should be provided by the income of her estate, payment of the loan out of such income may be directed.

2. An equitable action in such case was properly brought in the circuit court, where complete relief could be awarded, although the trustee derived his authority from the county court.

APPEAL from orders of the circuit court for Milwaukee county: W. J. TURNER, Circuit Judge. *Affirmed.*

This is an action against the defendant *Jerry J. Shea* and the *Wisconsin Trust Company,* as executor and trustee of the will of Kate Shea, deceased, to charge the property in the possession of such trustee with a lien to satisfy the demands of the plaintiff against *Jerry J. Shea,* and to foreclose a mortgage given by *Jerry J. Shea* on his interest in the lands of Kate Shea, deceased, to secure payment of $350 according to the condition of a promissory note, and for such other relief as may seem equitable.

Upon the death of one Kate Shea no original will made

by her could be found, but on March 8, 1912, an unsigned
carbon copy of what purported to be her last will was pre-
sented to the county court of Milwaukee county for probate
by one P. H. Kearns, the father and guardian of Mary Kearns
and four other children mentioned in said supposed will as
residuary legatees.    This copy was rejected by the court and
Mr. Wilde was appointed administrator of the estate of the
deceased.    The deceased left as heirs at law *Jerry J. Shea*
and Michael J. Shea, brothers, one sister, five minor children
of a deceased sister, and Margaret Shea, daughter of a de-
ceased brother.    The deceased left property valued at $4,000.
In February, 1913, the plaintiff loaned *Jerry J. Shea* $350,
taking his note therefor and a mortgage as security from said
*Jerry J. Shea* covering all of his right, title, and interest as
an heir at law in and to the real estate owned by Kate Shea,
deceased.

Later the original will of the deceased was found and ad-
mitted to probate on January 23, 1914.    Cornelius Sullivan,
named as executor, qualified on January 26th.    After di-
recting the payment of debts and naming Cornelius Sullivan
as executor and trustee the will devised and bequeathed all
of the property owned by her to Sullivan, with the request
that he convert the same into money or interest-bearing cer-
tificates as soon as practical and hold it in trust for the fol-
lowing purposes:

"(A) To pay to Calvary cemetery the sum of two hun-
dred dollars ($200), the income of which is to be used for
the perpetual care of the cemetery lot of my family.

"(B) Two hundred dollars ($200) is to be expended by
my said trustee for funeral expenses of my brother Michael
Shea.

"(C) The remainder of my estate is to be invested by my
said trustee, and the income thereof from time to time paid
to my beloved brother, *Jerry J. Shea.*    In the event that my
brother, *Jerry J. Shea,* becomes ill or is otherwise in great
need, my said trustee may pay to him from time to time

such part of the principal of my estate as in his judgment he ·deems wise and necessary.

"(D) After the death of my brother, *Jerry J. Shea,* and after the sum of two hundred dollars ($200) has been paid to Calvary cemetery, and the sum of two hundred ($200) set aside for the funeral expenses of my brother, Michael Shea, I direct that all the rest, residue and remainder of my estate be divided equally among Mary Kearns, Ellen Kearns, Henry Kearns, Teddie Kearns and Thomas Kearns."

The note and mortgage executed to the plaintiff became due February 25, 1914. This action was originally commenced against *Jerry J. Shea* and Cornelius H. Sullivan, as executor and trustee. At that time Sullivan had not come into possession of any of the property of the estate. Martin E. Wilde had not rendered his final account as administrator and was in possession thereof. Wilde was made a party defendant upon application of the plaintiff. March 30, 1914, Sullivan died and the *Wisconsin Trust Company* was appointed administrator with the will annexed. On May 23d an order was entered bringing in the *Wisconsin Trust Company* as a party defendant.

The defendants filed separate demurrers to the amended complaint, setting up as grounds (1) defect of parties defendant by omission of Mary Kearns, Ellen Kearns, Henry Kearns, Teddie Kearns, and Thomas Kearns, designated as residuary legatees under the last will and testament of Kate Shea, deceased, and (2) that the amended complaint does. not state facts sufficient to constitute a cause of action.

The circuit court overruled the demurrers of the defendants and gave the defendants leave to answer the complaint on payment of the sum of $10.

This appeal is from the orders overruling the demurrers to the complaint and the order bringing in the *Wisconsin Trust Company,* administrator with the will annexed, as a party defendant.

For the appellants the cause was submitted on the brief of

*Lorenz & Lorenz,* attorneys for the *Wisconsin Trust Company* as administrator.

For the respondent there was a brief by *Douglas J. Mangan,* attorney, and *Schmitz, Wild & Gross,* of counsel, and oral argument by *Mr. Mangan* and *Mr. Robert Wild.*

SIEBECKER, J. The appellants concede that the complaint states a good cause of action against *Jerry J. Shea* for the recovery of a money judgment for the $350 with interest due the plaintiff, and hence the general demurrer was properly overruled on that ground under sec. 2649*a,* Stats. 1913. Nor is the exception to the order overruling the demurrer that there is a defect of parties defendant now urged before this court. The appellants, however, insist that the appeal from the order overruling the demurrer of the defendant the *Wisconsin Trust Company* raises the vital question in this litigation, namely, "Can the creditor of one beneficially interested in an estate or trust maintain an action against an executor or trustee to control his conduct as to the payment or application of moneys in the hands of such executor or trustee belonging to the estate of his testator?" This proposition of the appellants in the light of the facts alleged does not include all the inquiries presented in this case. The complaint alleges the giving of the note and mortgage by the defendant *Jerry J. Shea;* that he actually received this amount of money from the plaintiff at the time of the execution of the note; that the note is now due and remains wholly unpaid. It also appears from the allegation that the parties to the note believed that *Jerry J. Shea* had a vested interest in the real estate of Kate Shea, deceased, and that he obtained the loan from the plaintiff on the agreement that his interest in the decedent's estate was to be conveyed to the plaintiff by mortgage to secure payment of the loan. This mortgage so obtained by the plaintiff, under the circumstances, wholly fails of its purpose because the decedent by her will bequeaths

all of her property to a trustee, directing him to convert it all into interest-bearing securities, pay two bequests of $200 each as directed, and dispose of the residue as follows:

"The remainder of my estate is to be invested by my said trustee, and the income thereof from time to time paid to my beloved brother, *Jerry J. Shea.* In the event that my said brother, *Jerry J. Shea,* becomes ill or is otherwise in great need, my said trustee may pay to him from time to time such part of the principal of my estate as in his judgment he deems wise and necessary."

After the death of *Jerry* the will directs that the rest, residue, and remainder of her estate is to be equally divided among Mary, Ellen, Henry, Teddie, and Thomas Kearns. It is obvious that *Jerry J. Shea* had no interest in his deceased sister's real estate which he could mortgage. Under the facts and circumstances alleged the plaintiff secured no rights under the mortgage by way of a lien on the real estate owned by Kate Shea, deceased, and hence it is of no value as a security to plaintiff for the repayment of the $350 loaned by him to *Jerry.* Under the facts alleged the plaintiff has no grounds for a reformation of the mortgage, nor has he a right to have the mortgage declared a mortgage lien on the property described therein nor on the proceeds realized therefrom on a sale thereof. Obviously the mortgage cannot be made the basis of any relief to the plaintiff. The action has been properly commenced for recovery by the plaintiff of the $350 he loaned to *Jerry J. Shea.* It is alleged that these parties were misled into negotiating this loan by reason of a mutual mistake as to *Jerry's* interest in the real estate described therein, due to the fact that the will of Kate Shea, deceased, was not found until after the loan had been made; and it may be shown that the loan to *Jerry J. Shea* was made to supply him with the necessaries of life, which the decedent evidently contemplated the income of her estate should provide him, and that *Jerry's* interest in this estate was intended

to be used to secure payment thereof. The conditions and circumstances impose pressing equitable considerations to have the court retain the case and exercise its equitable powers to afford the plaintiff such equitable relief as the facts and circumstances of the case will demand.

It appears that *Jerry J. Shea,* under the will of Kate Shea, has a beneficial interest in the trust created by her will. The provisions of the will clearly direct the trustee to convert the real estate and personal property into money and invest the same in interest-bearing securities. Under these circumstances the corpus of the trust will be treated as one of personalty. *Harrington v. Pier,* 105 Wis. 485, 82 N. W. 345; *Becker v. Chester,* 115 Wis. 90, 91 N. W. 87, 650. It is also well recognized that a *cestui que trust,* entitled to the absolute payment of the income of personal property held in trust for him, may sell and transfer his right to such income unless prevented from doing so by the conditions of the trust. *Williams v. Smith,* 117 Wis. 142, 93 N. W. 464; *Lamberton v. Pereles,* 87 Wis. 449, 58 N. W. 776. There is nothing in the terms and provisions of the will imposing any restriction or limitation on *Jerry* to prevent him from alienating his right to such income. Under the circumstances as alleged a court of equity may deal with the situation presented in a manner that will do justice between the parties. If after issue is joined it appears to the court that justice requires that plaintiff should receive payment of his loan to *Jerry J. Shea* out of his beneficial interest in this trust, then the court can exercise its equitable powers to accomplish this end. In *Williams v. Smith, supra,* the court referred to the powers of a court of equity in such cases and declared:

"It is competent for a court of equity, acting upon the debtor personally, to compel him to make such transfer, or, in lieu thereof, to effectuate that result by its decree. Such transfer can be as complete and of as full effect as any the debtor could make, to vest in the assignee complete ownership and right to demand payment from the trustees, and to

hold them to liability in case they disregard his rights after proper notification and demand."

We are of the opinion that the case presented demands that the court look into the facts and circumstances of the making of the loan by the plaintiff to *Jerry J. Shea,* and if the court finds, under the facts as they existed at the time the money was loaned, that a court of equity would have deemed them a good ground to make the loan to supply *Jerry's* needs as contemplated by the will, and that payment therefor should have been charged upon the income of the trust, then the court can compel a transfer of so much of the income as will be required to pay the debt. Of course the matter is one of equity, and the court must be satisfied that justice and good conscience require that such relief be granted. The right of courts to direct the application of the beneficial interest of a *cestui que trust* in proper cases is recognized in sec. 2091, Stats. 1913.

The appellants contend that the *Wisconsin Trust Company* as trustee cannot be dealt with in this matter by the circuit court, since the executor and trustee derives its authority from the county court, and relies on the authority of *Williams v. Smith, supra.* It suffices to point out that in this very case the circuit court's action was sustained where the executor and trustee were appointed by the county court as in this case. The court there held that a creditor of a *cestui que trust* had no right to maintain a creditor's suit or prosecute supplementary proceedings in circuit court against the executor and trustee to control the payment or application of moneys in their hands under authority from the county court; but it was also held that a creditor could proceed in equity in the circuit court against the debtor personally and compel satisfaction out of the income of the trust. The following cases sustain the practice of resorting to an equitable proceeding in the circuit court in such cases where its powers are required to award parties adequate and complete re-

lief: *Lamberton v. Pereles,* 87 Wis. 449, 58 N. W. 776; *Willis v. Fox,* 25 Wis. 646; *Meyer v. Garthwaite,* 92 Wis. 571, 66 N. W. 704; *Hawley v. Tesch,* 72 Wis. 299, 39 N. W. 483.

Giving the allegations of the complaint a liberal construction they are sufficient to entitle plaintiff to relief if the evidence adduced upon the trial sustains them in the respects indicated in the opinion.

*By the Court.*—The orders appealed from are affirmed.