JONES and others, Respondents, vs. CITIZENS' SAVINGS & TRUST COMPANY, Executor, and another, Appellants.

*March 4—April 2, 1919.*

*Claims against decedent: Concurrent jurisdiction of circuit court: Waiver of objections: Contract made by letters: Evidence: Transaction with person since deceased: Witnesses: Competency: Identification by widow of husband's signature: Attorney and client: Contract as to compensation: Construction: Changing finding by jury.*

1. As to claims against a deceased person, if the remedy in the court administering his estate is not full and complete the concurrent jurisdiction of the circuit court may be invoked. So *held* in the case of a claim against a partnership where it was desired to proceed against the estate of a deceased partner (which was being administered in an Ohio court) and the surviving partner and also to garnish a debt owing to the partnership by a Wisconsin corporation.

2. Where, in such case, the defendants appeared generally in the action and joined in a counterclaim against the plaintiffs, they waived any objection that the Ohio court had primary jurisdiction of the matter.

3. Where a contract between plaintiffs and a partnership was made by letters between them, those on behalf of the partnership being written by a partner since deceased, such letters are not inadmissible in evidence on the ground that they constituted a "transaction or communication" with a deceased person within the meaning of sec. 4069, Stats. Such letters would not be subject to contradiction by oral testimony of the deceased partner if he were living.

4. The widow of the deceased partner was competent in such a case to identify the signature of her husband, and her testimony in that respect did not involve any "transaction or communication" with the deceased, within the purview of sec. 4069, Stats.

5. Letters which passed between plaintiffs, who are attorneys at law, and a partnership since dissolved by death of one member, are *held* to show a distinct proposal by plaintiffs, understood and accepted by the partnership, that plaintiffs should be paid a regular scale of prices for services in certain proposed litigation involving infringement of a patent, and that in case of a settlement before or after such litigation plaintiffs were to be paid, over and above such agreed basis for charges, an additional amount equal to twenty per cent. of any sum paid by way of settlement, as compensation for obtaining such settlement; and a finding by the jury to the contrary was properly changed by the trial court.

APPEAL from a judgment of the circuit court for Milwaukee county: GEORGE CLEMENTSON, Judge.   *Affirmed.*

Prior to January, 1911, the plaintiffs, copartners and attorneys at law in Chicago, Illinois, principally engaged in patent litigation, had been employed by defendant *Maurice H. Glauber* and his brother, Joseph H. Glauber, now deceased, the two being then and thereafter copartners under the firm name of Glauber Brass Manufacturing Company, at Cleveland, Ohio, to conduct litigation against a firm in Illinois which it was claimed was infringing on the rights secured by letters patent issued to J. H. Glauber on water faucets and held by him for the benefit of the partnership. After such litigation had been terminated favorably to the Glaubers, correspondence was had between plaintiff *Addington* on behalf of his coplaintiffs and the Glauber Brass Manufacturing Company by Joseph H. Glauber, the material parts of which correspondence follow:

"January 2, 1911.
"Jones, Addington, Ames & Seibold, . . . Gentlemen: Attention *Mr. Addington.*   In order that we may come to an early conclusion regarding some procedure against the Hoffmann & Billings Mfg. Co. we will thank you to submit to us your proposition on the contingent-fee basis as discussed

with the writer and our *Mr. M. H. Glauber* while in Chicago
recently.

"We would like to have you write us clearly, explaining
in full your proposition so as to avoid any possibility of mis-
understanding, and so that we may clearly understand each
other, that we will not be obliged to proceed with suit in
court, unless we see some good chance of a good recovery,
nor accept any settlement that they may offer us, unless it
be an acceptable one to us. . . ."

"Chicago, January 7, 1911.

". . . Gentlemen: Replying to yours of the 2d inst. . . .
Now, in regard to the terms of handling the Hoffmann &
Billings negotiation. The writer will conduct the negotia-
tions for a settlement with Hoffmann & Billings upon a
basis of twenty per cent. of the amount obtained. . . . If
the negotiations prior to suit fail and a suit becomes neces-
sary, all services shall be paid for at the existing scale of
charges. If subsequently to the suit a settlement is reached,
then our percentage is to be applied in addition to the charge
for services rendered in the suit. But even though the suit
is started no charge is to be made by the writer for services
in negotiations for a settlement; nor is a charge to be made
at any time for services in closing a settlement out of which
we are to receive a percentage in consideration of our ser-
vices. . . .

"If the above is not entirely clear, write us and we will
endeavor to make it so. . . ."

"Cleveland, 1—17—11.

"Attention *Mr. Addington.* Dear Sir: Answering yours
of the 7th inst., wish to say that we do not fully understand
your proposition concerning charges. (a) . . .; (b) . . .;
(c) you say, 'if the negotiations prior to suit fail and a suit
becomes necessary, all services shall be paid for at the exist-
ing scale of charges.' It appears to us that this would re-
move the entire percentage plan between us. Does this
mean that all work done towards bringing about a settle-
ment would have to be paid for at the present existing scale
of charges if no settlement is concluded without suit?
(d) 'If subsequently to the suit a settlement is reached, then
our percentage is to be applied in addition to the charges for
services rendered in the suit.' According to this and para-
graph (c) you would be charging us the existing scale of

charges for all work prior to suit, also for all services rendered in the suit and the percentage in addition for negotiating the settlement.    We hardly think you mean it in this way.    (e) 'But even though the suit is started, no charge is to be made by the writer for services in negotiations for a settlement; nor is a charge to be made at any time for services in closing a settlement out of which we are to receive a percentage in consideration of our services.' This, we take, means that for the negotiations for which you receive a percentage you are not to receive in addition thereto your regular scale of charges.    (f) . . . (g) 'The point mainly sought to be guarded against by the writer is not to place you in a position to call upon any other member of the firm to conduct these negotiations upon the percentage basis.'    We take this to mean that only services in connection with the suit would not be included in the percentage basis.    If there are other services you have in mind we would thank you to advise more definitely.

"Our impression was that the twenty per cent. arrangement was to cover our expenses or cost in full for all your services (including any and all additional services you may require), excepting in the event suit became absolutely necessary, in which event only the services directly incidental to the suit should be paid for at the existing scale of charges.    That the twenty per cent. charge applied if no suit was necessary, or in full for all services and expense (except that directly incidental to suit) prior to and after suit.    Our impression was that the percentage included reporter's services or your own stenographer's services, traveling expense, and all other expenses necessary to conclude the settlement without suit. . . .

"We have written at length and assure you that our intentions are only to avoid misunderstandings.    It appears, however, that there are so many angles to this situation that we cannot foresee, therefore, if there is any way of your simplifying the proposition we would be pleased to have you do so, or have you straighten us out on the proposition you have submitted. . . ."

"Chicago, January 28, 1911.

"Glauber Brass Mfg. Co. . . . Gentlemen: In replying to yours of the 17th instant, we will follow the lettered subdivisions that you have adopted.

"(a) . . . (b) . . .

"(c) If negotiations fail and suit is required, no compensation would be required of you with respect to the services rendered unless ultimately a settlement was obtained, in which event the percentage arrangement would apply. In short, compensation for the negotiation services would be held in abeyance and might never produce anything to us.

"(d) For each class of service you are to pay but once. For negotiation service, never upon any other basis than a percentage basis. For litigation services, only as per the existing scale of charges.

"(e) The meaning of this is that not only are the negotiation services included in the percentage charge, but also the services required in closing up the settlement, such as the drawing up of the contract, etc.

"(f) Your understanding is correct.

"(g) I have nothing further in my mind, or, for that matter, up my sleeve.

"If I should have to do any traveling, you are to pay the traveling expenses, including hotel bills, etc. Any clerical service in our office you are not to be charged for so long as the percentage basis prevails. The commencement of suit upon negotiations failing is optional with you. . . . So far as the acceptance of any settlement is concerned, that is for you to decide. If you saw fit to reject what we might obtain, we could have no complaint. We would have to take our chance upon the negotiation of an acceptable proposition.

"I believe this letter, taken in connection with yours and with ours to which yours was a reply, puts this matter in as simple a form as it may well be put without further trouble on our respective parts. . . ."

"Cleveland, 1—30—11.

". . . Attention *Mr. Addington.* Dear Sir: After reading your explanations in letter of the 28th inst., it seems that we have a clearer understanding between us concerning the contingent fee. We also know that your treatment towards us will be fair and equitable, and that you will be willing to adjust any differences that may arise between us just as you have in the past, and therefore we suggest that you start to negotiate with the H. & B. Mfg. Company for settlement. . . .

"We believe you understand that we also intend to be fair with you, and we will both have to rely upon each other in this respect. . . ."

"Chicago, February 2, 1911.
"Glauber Brass Mfg. Co., Cleveland, Ohio. Gentlemen: Yours of the 30th ultimo is before us. The arrangements made are satisfactory to us and we are ready to proceed. . . ."

"Cleveland, 2—4—11.
"Messrs. Jones, Addington, Ames & Seibold. Hoffmann & Billings. Gentlemen: Contents of your letter of Feb. 2, '11, noted. . . . Jos. H. Glauber."

Thereafter efforts were made for a settlement with the Hoffmann-Billings Company, which failing, a suit was started in the name of J. H. Glauber in the district court for the Eastern district of Wisconsin in February, 1912. During the pendency thereof Mr. J. H. Glauber died, November 27, 1914; proceedings were had to probate his estate at Cleveland, Ohio, and the defendant *Citizens' Savings & Trust Company* was appointed executor, and the business of the partnership was continued as before by such executor and the defendant *Maurice H. Glauber.*

The federal court on March 29, 1915, entered an interlocutory decree affirming the validity of the patent in question, and thereafter proceedings were had to obtain an accounting for the profits made by the defendant and damages sustained by the plaintiff, which required a considerable amount of legal and accounting services. During such accounting various statements were required from and presented by the Hoffmann-Billings Company from their books of the profits from the sales of the patented device, the several statements increasing in amounts and the last one showing on its face about $30,000.

In the fall of 1916 negotiations were renewed for a settlement, and in October an offer of $5,000 was made by the Hoffmann-Billings Company, which was raised by them to $17,500 on December 7th. On receipt of such offer the

Glauber Company telegraphed to the plaintiffs stating the amount so offered and asking for an immediate answer as to about how much would be due plaintiffs in addition to their statement rendered on November 1st, which showed a balance due of $2,457. This was immediately answered by plaintiffs, stating that the balance shown on November 1st was increased by an additional sum, making it $2,799.76, and that "in addition to this our contract with you calls for twenty per cent. of the amount for which the case is settled after court costs have been deducted should you have to pay for them. The agreement is contained in the correspondence which passed between us in the months of January and February, 1911."

On December 10th the defendant *M. H. Glauber* and Mrs. J. H. Glauber telegraphed Hoffmann-Billings Company that the plaintiffs claimed a twenty per cent. slice, gross, of any amount paid in settlement and that this is in addition to the bills they have rendered; that this added to the bills and other expenses they had already paid out in the case, amounting to fully $10,000, would leave hardly anything for them if settled at the figure named; and that under these circumstances they cannot now see their way clear to accept anything less than $20,000 in full settlement.

This was accepted by the Hoffmann-Billings Company and a formal settlement at that amount was executed on December 18th providing for the payment of $2,500 on the execution of the agreement and the balance in monthly payments.

Statements were rendered by and payments made to plaintiffs from time to time on account of services and disbursements in the litigation itself, both before and after the death of J. H. Glauber. In the final settlement all but about $100 thereof was for services or disbursements subsequent to his death and therefore for services rendered while the business was being conducted by the executors of the estate and *Mr. Maurice H. Glauber.*

Thereafter the plaintiffs commenced suit against the defendants herein for the balance claimed to be due on the account for services and disbursements in the litigation, amounting to $3,000, with interest from various dates, together with the additional sum of $4,000 as a twenty per cent. commission upon the amount of $20,000 received and accepted by the Glaubers in settlement. A garnishment proceeding was instituted at the same time against the Hoffmann-Billings Company, and thereupon the defendants appeared in this action and by answer admitted that the plaintiffs, upon directions from the Glauber Brass Manufacturing Company, had brought the suit for the infringement referred to, and that though it was brought in the name of Joseph H. Glauber it was in fact brought for and on behalf of the copartnership, and at all times constituted and was treated as an asset of said copartnership.

They further admitted the probate proceedings upon the death of J. H. Glauber, the decision adjudging the validity of the claim under the patent and the making of the agreement of settlement of December 18, 1916, and then entered a general denial as to all the other matters in the complaint.

At the time of the trial and after substitution of attorneys on behalf of the defendants, an amended answer pleading the payment was filed and a counterclaim interposed admitting the employment by Joseph H. Glauber, deceased, and *Maurice H. Glauber* of the plaintiffs to render services in connection with the said litigation; that the services rendered by the plaintiffs from the time of such retainer up to the present time were reasonably worth not in excess of $3,000; that it had been agreed by the parties that in no event would the charge for the services rendered by the plaintiffs for the defendants exceed twenty per cent. of the total amount recovered, and that in reliance upon such agreement payments had been made on account from time to time. That there had been overpayment in excess of the reasonable value of said services and in excess of the twenty

per cent. of the settlement and which excess would approximate $8,000, and that there was due to the defendants from the plaintiffs the difference between the amount paid by defendants and the reasonable value of said services, amounting to $4,118.50, for which sum they demanded judgment.

Upon the trial and after motions for a directed verdict had been made by each party a special verdict was submitted the substance of which was as follows: (1) Was a contract entered into in 1911 between the Glauber Brass Manufacturing Company and the plaintiffs by which plaintiffs were employed to conduct the patent litigation in question? Answered "Yes" by the court. (2) Was it the agreement that in the event suit should be brought that the plaintiffs should be paid their regular fees for such services and in addition to such fee to receive a further sum of twenty per cent. of the amount for which the claim should be settled? Answered "No" by the jury; changed by the court to "Yes." (3) Were the regular established fees and charges for services and time which the plaintiffs charged to the defendants in that suit known to the Glauber Company at the time of the retainer in 1911? Answered by the jury "Yes." (4) Was it the agreement that for the entire services of the plaintiffs in the case mentioned the plaintiffs should receive no more than twenty per cent. of the amount recovered whether the recovery was by judgment or settlement? Answered by the jury "No."

Upon motion subsequent to the verdict the court changed the answer to the second question as above indicated from "No" to "Yes," and thereupon directed judgment in favor of the plaintiffs for the principal sum of $7,000, being the balance of $3,000 and the commission of $4,000, together with interest, costs, and disbursements; and from the judgment so entered defendants have appealed.

For the appellants there was a brief by *Rubin, Fawcett & Dutcher,* attorneys, and *A. W. Richter,* of counsel, all of Milwaukee, and oral argument by *Mr. Richter.*

For the respondents there was a brief by *Austin, Fehr & Gehrz* of Milwaukee, and oral argument by *Gustave G. Gehrz.*

ESCHWEILER, J.   The appealing defendants in this action contend substantially as follows:

(1) The court below should not have entertained jurisdiction of this action because, it being upon a contract sought to be enforced after the death of one of the parties thereto, Joseph H. Glauber, the remedy, so far as his estate was concerned, must be confined to the filing of a claim in the probate proceedings in Cleveland.

(2) That, being in the nature of a claim against the estate of Joseph H. Glauber and the defendant *Maurice H. Glauber,* it was such a joint liability that, the court below having under the first objection no jurisdiction as to the estate of the deceased partner, it had no jurisdiction as to the other defendant upon such joint obligation.

(3) That the letters purporting to show the contract and written by the deceased J. H. Glauber were inadmissible under sec. 4069, Stats., because such constituted a transaction with a deceased person.

(4) That the widow of the deceased, who testified on behalf of plaintiffs to the signature of the deceased J. H. Glauber to those letters, was an incompetent witness thereto.

(5) That under the evidence the answer of the jury to the second question of the special verdict should have been sustained.

Such authorities as *Wisdom v. Wisdom,* 155 Wis. 434, 437, 145 N. W. 126; *Lehman v. Weiner,* 167 Wis. 428, 167 N. W. 806, and many others in those cases cited holding that claims against a deceased person should be presented to the court administering his estate, all recognize the further rule that when the remedy in that court is not complete and full the concurrent jurisdiction of the circuit court may be invoked. *Meyer v. Garthwaite,* 92 Wis. 571, 573, 66 N.

W. 704; *Mangan v. Shea,* 158 Wis. 619, 625, 149 N. W. 378; *Eisentraut v. Cornelius,* 134 Wis. 532, 537, 115 N. W. 142; *Lindemann v. Rusk,* 125 Wis. 210, 226, 104 N. W. 119; *Burnham v. Norton,* 100 Wis. 8, 12, 75 N. W. 304.

The situation here warranted an appeal to the circuit court rather than to either a county court in Ohio or one in this state having ancillary jurisdiction. Here it was desired to impound by garnishment the fund that was owing from the Wisconsin corporation, Hoffmann-Billings Company. It was desired to proceed against the estate of the deceased, J. H. Glauber, the surviving partner, *M. H. Glauber,* and the Glauber Brass Manufacturing Company as continued after the death of J. H. Glauber.

Furthermore, any objection that some other court had primary jurisdiction was completely waived by all these defendants appearing generally in this action and raising no such objection by special plea or in their answers. They also all joined in a counterclaim based upon the alleged retainer of the plaintiffs during the lifetime of J. H. Glauber by the Glauber Brass Manufacturing Company. When they thus voluntarily use the jurisdiction of a court for the purpose of seeking to have it award them an asset, they ought not to be heard in successful lament when it gives them a liability.

This disposition of the question of jurisdiction renders it unnecessary to consider the second alleged error.

The letters between the parties, as appearing in the statement of facts, constituted the contract between them as much as though what is therein said was finally embodied in one writing signed by both. Such a written contract is not the "transaction or communication" referred to in sec. 4069, Stats., relied upon by appellants in their third assignment of error. The writings are the best evidence of the contract and they speak for themselves and needed and permitted no oral evidence from the writers thereof to establish them as the contract. The lips of J. H. Glauber, if

living, would have been just as much sealed, if called as a witness to testify either in confirmation or impeachment of the contract as expressed in the documents, as they were sealed by death at the time of the trial. There was nothing, therefore, offered which was subject to contradiction by J. H. Glauber were he living. The situation presented was neither within the letter nor spirit of the excluding statute in question.

The fourth objection was not well taken. The widow of J. H. Glauber might properly identify the signature of her husband. It in no sense involved any question as to the terms of the contract or as to the facts surrounding the writing of the particular letters. It also was not such "transaction or communication" as is within the purview of sec. 4069, Stats., *supra*. *Daniels v. Foster,* 26 Wis. 686, 693; *Beem v. Kimberly,* 72 Wis. 343, 363, 39 N. W. 542.

Under sec. 4192, Stats., these letters would themselves have been presumptive evidence that they had been signed by the person whose signature appeared thereon, except that such presumption does not extend to a document purporting to have been signed by some one deceased at the time of the trial.

The admissions in the answer of a retainer, the assertion that there was an employment which was relied upon by defendants as the basis for their counterclaim, the letters written by plaintiffs and produced by defendants upon notice, and the cross-references by dates and subject matter in those letters and the letters purporting to have been signed by J. H. Glauber, together with other evidence in the case, make it clear beyond peradventure that these letters were what they purported to be and the evidence of the widow more formal than substantial.

On the fifth and last point urged by appellants we are satisfied from an inspection of the letters of January and February, 1911, set forth in the statement of facts, that there was a distinct proposal by plaintiffs, understood and

accepted by defendants, that there was to be paid a regular scale of prices for services in the litigation, and in case of a settlement before or after the suggested litigation there was then to be paid, over and above such agreed basis for charges, an additional sum equal to twenty per cent. of any sum paid by way of settlement, as a compensation for obtaining such a settlement. The parties so agreed and must be bound thereby. Furthermore, the defendants made efficient use of such claim by obtaining on account thereof an increase of $2,500 from the Hoffmann-Billings Company in the final settlement.

Both parties having moved for a directed verdict, the court might well have, under sec. 2857a, Stats., ordered judgment for plaintiff without submitting to the jury the questions which it did. There was no error in the court's changing the answer of the jury to the second question and finding as a matter of law that the contract was as contended by plaintiffs, and particularly so when the jury, upon the evidence, by their answer to the fourth question had determined that the contrary view asserted by the defendants was not the correct one. The court was clearly right in directing judgment for the plaintiffs as it did.

*By the Court.*—Judgment affirmed.

KERWIN and ROSENBERRY, JJ., took no part.